**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **METHODIST HEALTH SYSTEM FOUNDATION, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10 - 3292** |
| **HARTFORD FIRE INSURANCE COMPANY** | **SECTION "C"(2)** |

### ORDER AND REASONS[1]

Before the Court are cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure filed by Defendant, Hartford Fire Insurance Company ("Hartford") and Plaintiff, Methodist Health System Foundation ("Methodist").  (Rec. Doc. 17); (Rec. Doc. 18). Having considered the memoranda of counsel, the record, and the applicable law, the Court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's motion for summary judgment for the following reasons.

### I. Background

This dispute arises out of a commercial crime policy issued by Defendant, Hartford, to Plaintiff, Methodist. (Rec. Doc. 17-4 at 5-25).  Plaintiff seeks recovery under the insurance policy for losses suffered from its investment portfolio as a result of the infamous Bernard Madoff ponzi scheme. (Rec. Doc. 22 at 3).  Defendant contends that the commercial crime policy at issue does not provide coverage for the losses Plaintiff suffered when its shareholdings lost value after the discovery of Madoff's scheme.  (Rec. Doc. 17-1 at 1).

---

[1]Sami Aboulhosn, a second year law student at Tulane University Law School, contributed significantly to the research and preparation of this decision.

Over the course of two separate purchases, the first in May 2004, and the second in March 2007, Plaintiff invested $6.7 million worth of shares in Meridian Diversified Fund, Ltd ("Meridian"), a mutual fund that invests in hedge funds.  *Id.* at 1-2.  Meridian in turn invested a portion of its holdings in the Tremont Hedge Fund, which in turn invested a portion of its holdings in Bernard L. Madoff Investment Securities, Inc ("BLMIS"), a fund managed by Bernard Madoff.  (Rec. Doc. 22 at 2).  These shares earned substantial profits in the years between 2004 and 2007, and by September, 2008, Methodist's investment had risen substantially in value.  (Rec. Doc. 17-1 at 2).  In late 2008, however, amidst widespread economic recession, the value of Plaintiff's shares decreased substantially due at least in part to the discovery of the Madoff ponzi scheme, which caused Tremont to suffer losses  that ultimately affected Plaintiff via its investment in Meridian.  (Rec. Doc. 22 at 3).

Plaintiff subsequently filed an insurance claim in the fall of 2009 under Defendant's commercial crime policy, specifically Insuring Agreement 5, which covers loss from computer fraud. (Rec. Doc. 17-1 at 3).  Plaintiff contends that the policy covers its losses sustained as a result of the Madoff ponzi scheme because Madoff used a computer to generate false documents that misled investors and gave the appearance of a legitimate investment operation.  (Rec. Doc. 22 at 1). Defendant, however, has denied the claim on the grounds that there was no covered computer fraud loss, that the losses were indirectly related to the Madoff scheme, and that several policy exclusions apply to this claim. (Rec. Doc. 17-1 at 3-4).  Defendant has moved the Court for summary judgment alleging that Plaintiff's claim is not covered by the commercial crime insurance policy issued by Defendant.  (Rec. Doc. 17 at 1).  Plaintiff has also moved for summary judgment alleging that Defendant's insurance policy affords coverage for the loss sustained by Plaintiff as a result of the Madoff ponzi scheme.  (Rec. Doc. 18 at 1).

## II. Law and Analysis

*A. Motion for Summary Judgment*

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). In this case, the material facts are undisputed, and therefore the only issue before this Court is the interpretation of the language of the Hartford Insurance Contract, specifically whether the policy covers Plaintiff's losses. (Rec. Doc. 22 at 2).

*B. Controlling Law*

In diversity cases, federal courts must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In determining which state's substantive law controls, the court applies the choice-of-law rules of the forum state. *In Re: Katrina Canal Breaches Litigation*, 495 F.3d 191, 206 (5th Cir. 2007). In an action involving the interpretation of insurance policies issued in Louisiana, Louisiana's substantive law controls. *Id.* Furthermore, neither party disputes that Louisiana's substantive law controls the present dispute.

Under Louisiana law, the insured party bears the burden of proving that its damages are covered under the insurance policy. *Doerr v. Mobil Oil Corp.*, 744 So. 2d 119, 124 (La. 2000). "On the other hand, the insurer bears the burden of proving the applicability of an exclusionary clause

3

within a policy." *Id.* Therefore, the insured must first prove that the policy affords coverage for its

sustained damages. *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 358-59 (5th Cir. 2010). If the insured

is successful, then in order to avoid liability, the insurer must establish that the damage is subject to

an exclusion under the policy. *Id.*


## C. The Hartford Insurance Policy

The Hartford Insurance Policy prefaces the entirety of its agreement with the following

provision:

> In exchange for the payment of premium and subject to the Declarations, Insuring
> Agreements, Exclusions, General Conditions, Definitions and terms of this Policy, we
> will pay for loss which you sustain *resulting directly from* acts committed or events
> occurring at any time and discovered by you during the Policy Period . . .

(Rec. Doc. 17-4 at 6) (emphasis added). Plaintiff seeks recovery under Insuring Agreement 5, the

Computer Fraud Provision, which reads, in relevant part: "We will pay for loss of and loss from

damage to 'money,' 'securities,' and 'other property' following *and directly related to the use of any*

*computer* to fraudulently cause a transfer of that property from inside the 'premises' . . ." to a person

or place outside those premises. *Id.* at 7 (emphasis added).


### (1) The Direct Loss Provision

Defendant claims that Plaintiff has not met its burden of proving that its sustained losses are

covered by the Hartford Insurance Policy. (Rec. Doc. 17-1 at 8). The Louisiana Supreme Court has

held that "[t]he word 'direct' as used in a contract insuring against direct loss or damages means

immediate or proximate as distinguished from remote." *Cent. La. Elec. Co. v. Westinghouse Elec.*

*Corp.*, 579 So. 2d 981, 985 (La. 1991). Furthermore, "[i]nclusion of the words 'resulting directly

from' indicates an intent to limit the coverage available and is especially significant because the language appears in a section of the policy that specifically addresses the scope of the coverage." *Lynch Props. Inc. v. Potomac Ins. Co.*, 962 F. Supp. 956, 961 (N.D. Tex. 1996), *aff'd*, 140 F.3d 622 (5th Cir. 1998).  For example, in *Lynch Props. Inc. v. Potomac Ins. Co.*, an insurer denied coverage to an insured real estate company when an employee embezzled funds from a customer's account.  962 F. Supp. at 959.  The real estate company reimbursed the customer and subsequently sought recovery from its insurer under a commercial crime policy that required loss resulting directly from employee dishonesty.  *Id.* at 961.  The court found in favor of the insurer because the losses suffered by the company, who had to refund the losses to the customer, were not a "direct result" of the employee dishonesty since they were one step removed from the embezzlement.  *Id.*

Here, while the Madoff ponzi scheme was a contributing factor in Plaintiff's sustained losses, this Court finds that the Madoff ponzi scheme was not a direct cause of Plaintiff's losses.  *See Cent. La. Elec. Co.*, 579 So. 2d at 985.  Like the insurance policy in *Lynch*, the direct loss provision in the Hartford contract is significant because it prefaces the entire contract, appearing "in a section of the policy that specifically addresses the scope of the coverage."  962 F. Supp. at 961.  Moreover, Plaintiff's losses in this case were even further removed from the Madoff ponzi scheme than the insured employer was from the employee's embezzlement in *Lynch*.  *See Id.*  In that case, the court held that only the customer suffered losses "resulting directly from" the employee dishonesty and therefore denied coverage to the insured employer.  *Id.*  Similarly, in this case, only Tremont suffered losses "resulting directly from" the Madoff ponzi scheme; Plaintiff was too far removed from the Madoff scheme in order to recover under a "direct loss" provision because Plaintiff invested in Meridian, who invested in Tremont.  *Id.*  For the same reasons stated in *Lynch*, this court agrees that

5

the inclusion of the words "directly related to" in the Hartford Insurance Policy indicates an intent to provide coverage only for direct losses to the insured. *Id. at 962.* Therefore, this Court finds that Plaintiff has not met its burden of proving that its losses are covered by the insurance policy because Plaintiff's investment in Meridian was too many steps removed from Madoff's fraud. *See Doerr*, 744 So. 2d at 124.

### (2) The Trading Loss Exclusion

In addition to Plaintiff's failure to meet the direct loss provision, Defendant has established that several exclusions of the Hartford Insurance Policy also bar recovery by Plaintiff. *See id.* Exclusion O of the Hartford Insurance Policy states that the policy does not apply to "[l]oss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account." (Rec. Doc. 17-4 at 9). Louisiana courts have interpreted the word "trading" as having "the same meaning it has in any mercantile business, namely, the buying and selling of commodities." *Hepler v. Fireman's Fund Ins. Co.*, 239 So. 2d 669, 679 (La. App. 1st Cir. 1970). For example, in *Hepler*, a bond purchaser suffered losses when the bonds lost value and sought recovery under his insurance policy, which contained a Trading Loss Exclusion nearly identical to Hartford's. *Id.* at 678. The court denied liability under the trading loss exclusion because the purchase and sale of bonds constituted the buying and selling of commodities and that "[t]he very least that can be said is that the loss was one resulting indirectly from trading." *Id.* at 679.

Here, the exclusionary language of the Hartford Insurance Policy is nearly identical to the trading loss exclusion in *Hepler*, for both policies exclude losses resulting indirectly from trading. *Id.* at 679. Plaintiff argues that the trading loss exclusion does not apply because Plaintiff's act of

investing in Meridian does not constitute "trading" under the provision.  (Rec. Doc. 22 at 13).

However, this Court finds that investment in a mutual fund such as Meridian sufficiently constitutes

"trading" because it involves the buying and selling of securities.  *See Hepler*, 239 So. 2d at 679.  The

Fifth Circuit has stated that mutual funds are "clearly securities."  *Grainger v. State Sec. Life Ins. Co.*,

547 F.2d 303, 306 (5th Cir. 1977) (citing *SEC v. United Benefit Life Ins. Co.*, 387 U.S. 202, 211-212

(1967)).  Therefore, the purchase of shares in a mutual fund is equivalent to the buying and selling of

securities and thus constitutes "trading" under the insurance contract.  *Hepler*, 239 So. 2d at 679.

Plaintiff further argues that even if its investment in Meridian does constitute "trading," the

Trading Loss Exclusion does not apply because Plaintiff's losses were not caused by its investment

in Meridian but rather by Madoff's fraudulent misrepresentations.  (Rec. Doc. 22 at 13).  However,

even though Plaintiff's investment with Meridian is not directly responsible for the losses sustained,

the insurance provision specifically excludes losses "resulting directly or indirectly from trading."

(Rec. Doc. 17-4 at 9).  While the Court agrees that Plaintiff's losses were not a direct result of its

investment in Meridian, the Court is satisfied that these losses are sufficiently connected to the

investment in Meridian as to fall under the indirect provision of the Trading Loss Exclusion of the

insurance policy.  *Id.*

*(3) The Entrustment Exclusion*

Exclusion R of the Hartford policy states that Hartford will not pay for: "Loss resulting from

your, or anyone acting on your express or implied authority, being induced by any dishonest act to

voluntarily part with title to or possession of any property."  (Rec. Doc. 17-4 at 9).  In determining

whether an entrustment exclusion applies, the question is whether the property was "delivered or

entrusted" to the third party that caused the loss. *David R. Balogh, Inc. v. Pa. Millers Mut. Fire Ins. Co.*, 307 F.2d 894, 896 (5th Cir. 1962). The "dishonest act" under this exclusion may be made by a third party and does not need to be the party to whom the insured entrusted the property. *Id.* at 897. For example, in *David R. Balogh, Inc. v. Pa. Millers Mut. Fire Ins. Co.*, the Fifth Circuit denied coverage under a similar entrustment exclusion when a jeweler entrusted an emerald to a middleman who entrusted the gem to a prospective customer after the customer insisted on an examination of the emerald. *Id.* at 895. The customer then stole the emerald. *Id.* The Fifth Circuit in that case found for the insurer because an entrustment had occurred that barred coverage since the emerald had been voluntarily handed over to the thief. *Id.* at 897.

Here, Plaintiff voluntarily entrusted its funds to Meridian with the expectation that Meridian would invest wisely. Plaintiff seeks to distinguish *Balogh*, whose voluntary entrustment of the emerald was once removed from the thief, because Madoff's dishonest act was twice removed from Plaintiff's entrustment with Meridian. *Id.* at 895. However, this Court finds it insignificant that Madoff's dishonesty was twice removed from the original entrustment in Meridian because the Hartford policy excludes loss resulting from "any dishonest act" that induces the insured, "or anyone acting on [the insured's] express or implied authority" to voluntarily part with the property. *Id.*; (Rec. Doc. 17-4 at 9). This Court is satisfied that both Meridian and Tremont were "acting on [Plaintiff's] implied authority" because Plaintiff knowingly and voluntarily entrusted both funds with its investment. By investing in Meridian, a mutual fund known to invest in hedge funds, Plaintiff entrusted its investment to Meridian and any fund in which Meridian subsequently invested. (Rec. Doc. 17-4 at 9). The Court therefore finds that both Meridian and Tremont were acting on Plaintiff's implied authority, and thus the entrustment exclusion applies.

*(4) Computer Fraud*

Given the failure to meet the "direct loss" requirement and the applicability of several exclusions, this Court sees no reason to address the issue of whether the losses in this case occurred as a result of computer fraud as required under the Hartford Insurance Policy.

## III. Conclusion

Accordingly,

IT IS ORDERED that the motion for summary judgment filed by Hartford Fire Insurance Company is GRANTED and Methodist Health System Foundation's claims against Hartford are DISMISSED WITH PREJUDICE.  (Rec. Doc. 17).

IT IS FURTHER ORDERED that the motion for summary judgment filed by Methodist Health System Foundation is DENIED.  (Rec. Doc. 18).

New Orleans, Louisiana, this 1st day of July, 2011.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE